UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA FLONES,

                     Plaintiff,                              Case No: 11-14416

v.                                                 Hon. Victoria A. Roberts

BEAUMONT HEALTH SYSTEM,

                     Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 18)

**I.      INTRODUCTION**

This is an action for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. Melissa Flones claims her termination from employment was based on her age because of remarks made. She also claims Beaumont terminated her because she complained of these remarks; and, she says Beaumont created a hostile work environment.

Beaumont Health System ("Beaumont") filed this motion for summary judgment under Federal Rule of Civil Procedure 56. There are no genuine issues of material fact regarding the legality of Flones' termination; Beaumont is entitled to judgment as a matter of law; its motion is **GRANTED**.

## II.    BACKGROUND

The following facts are undisputed. Flones worked for Beaumont as a Certified Registered Nurse Anesthetist ("CRNA"). Beaumont assigned her to an operating room ("room"). She was responsible for checking the anesthesia machine, interviewing patients, inducing anesthesia, monitoring and waking up patients, and taking them to recovery. She worked under the supervision of an anesthesiologist. The anesthesiologist is usually responsible for up to four rooms simultaneously; each room is staffed by a CRNA under his or her direction. The anesthesiologist is not in the room throughout a procedure; he or she induces anesthesia, delegates responsibilities to the CRNA, and then returns periodically during the operation.

On April 6, 2010, Beaumont terminated Flones' employment. She was 61. Flones claims that Beaumont discriminated against her because of her age, and retaliated against her for complaining of sexual harassment and a hostile work environment. Flones bases her claims on the following:

(A) During Flones' performance evaluation in August, 2008,--nearly 18 months before Flones' termination--Mary Golinski, the Chief Nurse Anesthetist, allegedly questioned whether Flones was too old to work 16 hour shifts and said that Flones' co-workers were complaining. In February, 2010, Flones reported this statement to Brian Cardeccia--human resources representative--and Judy Demario--administrative director of surgical services, but only after she had only been issued her second Plan for Performance Improvement (PPI) notice.

(B) Flones says that lead CRNA Sue Winay said she was "sick of all you hormonal women, it's time we got rid of half of you fuckers" and "if I had a nine

2

millimeter, I'd take somebody out." Flones reported this statement to Cardeccia and Demario. These remarks were made nine months before Flones met with Cardeccia and Demario.

(C) Flones says that Golinski was aware of and tolerated the comments of CRNA Earl Auty who sometime in 2009 referred to the "young hard bodies" of women employees and referred to a young woman as the "hot babe" in the pre-operation room. Flones reported this statement to Cardeccia and Demario.

(D) Flones says that in February, 2010, she learned from a co-worker that CRNA Eric Reim told other employees that Golinski was going to fire Flones and another CRNA in his sixties. Flones says this statement led her to meet with Cardeccia and Demario in February, 2010.

After that meeting, Cardeccia instructed Demario to conduct an investigation. The only remark which could be corroborated was Reim's. He admitted he made the remark, but based it on comments from an anesthesiologist, not on anything he heard directly from Golinksi. Cardeccia testified that Winay had a tendency to make comments inappropriate for the workplace, that he instructed Demario to tell Winay those comments were inappropriate, and that he told Golinski that such behavior needed to be reported and addressed.

Flones did not tell human resources personnel that she felt she was being treated differently than a younger employee or a male employee. But, she now believes she was because younger employees were not subject to similar disparaging remarks.

Beaumont alleges that it based its decision to terminate Flones on several incidences:

(1) Flones used her smart phone in front of a patient: On August 31, 2009, Flones was assigned to administer anesthesia to a patient. She was waiting for the doctor to arrive to begin providing patient care. Flones acknowledged that she was using her phone in the procedure room, but that she did nothing wrong because she was looking up medical information. However, she admitted that the information she sought on her phone was unrelated to the patient for whom she was then responsible; it was related to a friend's son. Beaumont disciplined Flones and issued her a PPI notice on November 30, 2009. Flones admitted to Golinski that she violated Beaumont's rule by using her phone in the procedure room. She did not grieve this disciplinary action.

(2) Flones' error in medicine administration: On January 5, 2010, Flones was assigned to set up and administer anesthesia into a labor and delivery patient's epidural using an infusion pump. After the anesthesiologist inserted the catheter, it was Flones' responsibility to place the anesthesia in the pump for infusion into the patient. Instead, Flones put an antibiotic in the pump and started it up. After the anesthesiologist asked about the composition of the anesthetic in the bag, Flones and the anesthesiologist looked at the bag together and caught the error before the patient received any of the wrong medication. It was Flones' responsibility to verify that the right medication was in the pump. On February 1, 2010, Beaumont disciplined Flones for failure to check the drug before inserting it into the infusion pump, and issued her a Level II PPI notice; this carried a one-day suspension. The incident was reported to the Michigan Department of Community Health pursuant to regulation; the Department took no action against Flones. Flones understood she was disciplined for making a mistake and admits she made it. She also understood that she was under observation for her administration of

4

drugs, blood, and fluids, and knew that any further errors could result in her termination.

(3) Flones' administration of blood to a patient: On March 29, 2010, Flones was assigned to a room with Dr. Schreck--the anesthesiologist--for a patient receiving a total hip replacement. Flones says that she noticed the patient was losing blood and made a loud verbal request for blood; she says that requests for blood are within a CRNA's duties, and if the surgeon disagrees then he or she will overrule the CRNA's call for blood. Flones admits that her license does not allow her to diagnose the need for blood, but asserts that Dr. Schreck did not object to her decision that a blood transfusion was needed. Beaumont says that Flones made the unilateral decision to administer a blood transfusion to the patient, although this was against Beaumont's policy and she was not licensed to transfuse blood without a verbal order from a physician. Beaumont says that Flones did not ask Dr. Schreck if she could administer blood, that Dr. Schreck first knew of the blood transfusion once it had begun, and that Flones erroneously assumed that Dr. Schreck's silence meant he approved. As he was finishing the hip replacement, Dr. Schreck questioned the blood transfusion.

Beaumont issued Flones a Level III Termination allegedly due to the blood transfusion incident and her two previous PPI notices.

Flones unsuccessfully grieved her termination. The Grievance Counsel concluded that Flones acted outside the scope of her license by ordering and administering blood without an explicit order from a licensed physician.

Beaumont notified the Michigan Department of Community Health pursuant to regulation. The Department investigated. Flones told the investigator in charge that she had discussed the patient's blood loss with Dr. Schreck, and, although he did not object,

5

she did not receive a written or verbal order from him. The Department concluded that Flones provided appropriate care and used good judgment; its complaint alleging violations of the Public Health Code was dismissed.

Following her termination, Flones filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging age discrimination and retaliation in violation of the ADEA and Title VII, respectively. She received a right to sue letter and filed this lawsuit on October 6, 2011.

Beaumont moves for summary judgment.

## III.   STANDARD OF REVIEW

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United*

*Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support o the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IV.   ANALYSIS

Beaumont says: (1) Flones has no facts to support a claim of differential treatment based on age and that Beaumont had legitimate, non-pretextual reasons to terminate Flones; and (2) Flones has no evidence of retaliation because she complained to Cardeccia and Demario.

### 1. Count One: Age Discrimination

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §

7

623(a)(1). "The purpose of the ADEA . . . is to protect older workers from being 'deprived of employment on the basis of inaccurate and stigmatizing stereotypes,' and to ensure that employers evaluate their employees on the basis of their merits, and not their age." *Allen v. Diebold*, 33 F.3d 674, 676-677 (6th Cir.1994) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). "Disparate treatment [as Flones alleges] ... captures the essence of what Congress sought to prohibit in the ADEA. It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age." *Hazen Paper*, 507 U.S. at 610.

The burden of persuasion is on Flones to show that "age was the 'but-for' cause of [Beaumont's] adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). Flones "may establish a violation of the ADEA by either direct or circumstantial evidence." *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)).

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). Beaumont's actions or statements which reflect a discriminatory attitude would constitute direct evidence of discrimination against Flones. *See  E.E.O.C. v. Freedom Adult Foster Care Corp.*, 929 F. Supp. 256, 261 (E.D. Mich 1996) (citing *Lynch v. Belden & Co., Inc.*, 882 F.2d 262, 269 (7th Cir.1989) ("Direct evidence of discriminatory intent consists of actions or

remarks by the defendant that reflect a discriminatory attitude.")).

Flones says that the suspect remarks are direct evidence of discrimination even if they were not made in the context of the decision to terminate her.

This argument is unavailing. The statements upon which Flones relies are not probative of Beaumont's discriminatory animus. While discriminatory remarks, even by a non-decision maker, can be probative evidence of pretext, statements by non-decision makers, or statements by decision-makers not made in the context of the decisional process itself are insufficient to satisfy a plaintiff's burden to demonstrate discriminatory animus. *Blizzard*, 698 F.3d at 287. Flones presents no evidence to suggest that Winay, Auty, and Reim's statements were related to Beaumont's decision to terminate her, or even that these employees were involved in that decision. *See Geiger*, 579 F.3d at 621-22. In addition, assuming Golinski was involved in the decision to terminate Flones, Golinski's comment--even if it was actually made 18 months before the decision to terminate Flones--does not relate to the decision process of terminating her, and is too remote in time to the termination to constitute direct evidence of discrimination. *See Millner v. DTE Energy Co.*, 285 F. Supp. 2d 950, 966 (E.D. Mich. 2003) ("Comments that are isolated or ambiguous or remote in time in relation to the employment decision at issue generally have been held not to constitute direct evidence.").

When there is no direct evidence of age discrimination, the claim is analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Blizzard*, 698 at 283. To establish a *prima facie* case relying upon indirect evidence of age discrimination, Flones must establish that: (1) she is a member of a

9

protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the position; and, (4) she was treated differently from similarly situated employees outside the protected class. *Briggs v. Potter*, 463 F.3d 507, 514 (6th Cir. 2006).

Beaumont argues that Flones cannot prove a *prima facie* case of discrimination because she has no evidence that Beaumont treated her differently than a similarly situated younger employee--one who administered incorrect medication and was not suspended or terminated.

Flones does not address this argument, which is fatal to her claim, since evidence that she was treated differently is essential to establishment of a *prima facie* case. In fact, Plaintiff does not discuss the *McDonnell Douglas* framework in connection with her claim of age discrimination; she presents hers only as a direct evidence of discrimination case.

Even assuming, *arguendo*, that Flones made a *prima facie* case of discrimination, her claim would be unavailing because Beaumont's reasons to terminate her are not pretextual.

Under *McDonnell Douglas* and its progeny, if Flones succeeded in making out a *prima facie* case of age discrimination, Beaumont must "articulate some legitimate, nondiscriminatory reason" for her termination. *McDonnell Douglas*, 411 U.S. at 802. "If [Beaumont] meets this burden, then the burden of production shifts back to [Flones] to demonstrate that the proffered reason is a pretext." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003).

10

Beaumont sets forth several legitimate, nondiscriminatory reasons why it terminated Flones: her repeated errors related to patient care and interaction.

Flones has the burden to produce "sufficient evidence from which a jury could reasonably reject [Beaumont's] explanation of why it fired her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). She can accomplish this by proving "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her discharge], or (3) that they were *insufficient* to motivate discharge." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (emphasis in original) (internal quotation marks omitted).

"The first category implicates evidence that the proffered bases for [Flones'] discharge never happened, and the second category requires that Flones "admit[ ] the factual basis underlying [Beaumont's] proffered explanation and further admit[ ] that such conduct could motivate dismissal. The third category of pretext consists of evidence that other employees, particularly employees outside [of Flones'] protected class, were not disciplined even though they engaged in substantially identical conduct to that which [Beaumont] contends motivated its discipline of [Flones]." *Id.* The three-part test need not be applied rigidly. *Blizzard*, 698 at 285. "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen*, 580 F.3d at 400 n. 4.

Flones does not present sufficient evidence from which a jury could reasonably reject Beaumont's explanation of her termination.

First, Flones cannot establish that the proffered reasons had no basis in fact. She

11

used her cell phone for something unrelated to the medical care of the patient for whom she was caring; erred by placing the wrong medication bag in the infusion pump; and, transfused blood to a patient without explicit instructions from a doctor.

Second, Flones cannot avail herself of the second category of pretext. She does not admit the factual basis of Beaumont's proffered reasons to discipline her or that such conduct could motivate dismissal. She disputes the alleged impropriety of her cell phone use, the severity of her punishment for the infusion pump incident, and whether Dr. Scheck ordered her to transfuse blood.

Finally, Flones cannot establish the insufficiency of Beaumont's proffered reasons; she has not presented any evidence that other employees were treated differently in light of conduct similar to hers. *See Blizzard*, 698 F.3d at 286-87.

Flones presents no direct evidence of age discrimination. Nor does she even attempt to argue that she makes out a *prima facie* case of discrimination under the *McDonnell Douglas* framework, or show that Beaumont's proffered reasons for her termination were pretextual. Beaumont is entitled to judgment as a matter of law on Flones' age discrimination claim.

### 2. Count Two: Retaliation

A plaintiff in a Title VII or ADEA action may establish retaliation by either introducing direct evidence of retaliation or proffering circumstantial evidence to support an inference of retaliation. *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004). Direct evidence is evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action. *Abbott v. Crown Motor Co.*,

348 F.3d 537, 542 (6th Cir.2003).

Flones does not present direct evidence of retaliation. There is no evidence of an explicit statement from Beaumont that it fired her in response to her complaints to Cardeccia and Demario. Instead, hers, at best, is a circumstantial case for retaliation.

When a plaintiff presents only circumstantial evidence, retaliation claims are examined under the same *McDonnell Douglas* framework that is used to assess claims of discrimination. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987). Flones has the initial burden to establish a *prima facie* case of retaliation by showing that: (1) she engaged in protected activity; (2) this exercise of his protected civil rights was known to Beaumont; (3) Beaumont then took an adverse employment action against Flones; and, (4) there was a causal connection between the protected activity and the adverse employment action. *Hamilton v. General Electric Corp*, 556 F.3d 428, 435 (6th Cir. 2009).

Flones first complained of alleged sexual harassment and discrimination in February, 2010. By then she had received two PPI notices and one suspension. Therefore, the only adverse employment action which she could have suffered as a result of her complaint to Cardeccia and Demario was her termination in April, 2010, which was related to the blood transfusion. The only issue in dispute is whether there was a causal connection between Flones' complaint to Cardeccia and Demario and her termination.

Beaumont argues that Flones cannot establish a *prima facie* case of retaliation because the only connection between Flones' termination and her complaint of

13

discrimination and harassment is that the termination occurred after her complaint.

Flones argues that the temporal proximity between the protected activity--her complaint--and her termination supports a finding of causal connection to satisfy her *prima facie* case of retaliation.

The burden at the prima facie stage is minimal; it requires Flones to bring forth some evidence to deduce a causal connection between the retaliatory action and the protected activity. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). A causal connection is established when a plaintiff proffers "evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) (quoting *Avery Dennison Corp.*, 104 at 861).

In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008), the Sixth Circuit clarified whether temporal proximity alone may be sufficient to satisfy the causal connection requirement:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Id.* (reasoning that an employee who was terminated immediately after exercising protected activity "would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation."). "In those limited number of

14

cases . . . where an employer fires an employee immediately after learning of a protected activity, we can infer a causal connection between the two actions" even if an employee does not present other evidence of retaliation. *Id.*

Courts rarely find a retaliatory motive based solely on temporal proximity. *Vereecke v. Huron Valley School. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). "'[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.'" *Williams v. Zurz*, 503 F. App'x 367, 373 (6th Cir. 2012) (quoting *Mickey* 516 F.3d at 525)*; see, e.g., Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363–64 (6th Cir. 2001) (causal connection existed when temporal proximity was coupled with evidence that plaintiff's coworkers were told to make false claims of theft and harassment against plaintiff or lose their jobs); *Moore v. KUKA Welding Sys.*, 171 F.3d 1073 (6th Cir. 1999) (causal connection existed when temporal proximity was coupled with evidence that plaintiff was treated differently from other employees).

Flones was terminated approximately two months after her meeting with Cardeccia and Demario; she was not fired "immediately" or "very close in time." *See Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (finding that temporal proximity of "two to five months" between protected conduct and adverse action is insufficient by itself to infer a causal connection); *Collias v. Rd. Comm'n for Oakland Cnty.*, 2010 WL 5295233 (E.D. Mich. Dec. 20, 2010) (two month period between protected activity and termination was insufficient, alone, to satisfy the causal connection requirement); *see*

also *Keeling v. Horizons Youth Servs., L.C.*, 2011 WL 2633530 (E.D. Ky. July 5, 2011); *cf. Howington v. Quality Rest. Concepts*, LLC, 298 F. App'x 436, 447 (6th Cir. 2008) (causal connection existed based solely on temporal proximity where employee was suspended just two days after reporting sexual harassment to management). In addition, Flones presents no evidence of retaliatory conduct which, coupled with temporal proximity, would establish a causal connection between her complaint and her termination. She fails to make a *prima facie* case of retaliation.

Even assuming, *arguendo*, that Flones did satisfy the elements of a *prima facie* case of retaliation, Beaumont's reasons to terminate her are not pretextual.

If Flones made a *prima facie* case, the burden would have shifted to Beaumont "to produce evidence of a legitimate, nondiscriminatory reason for its actions." *Hamilton*, 556 F.3d at 435 (internal quotation marks omitted). If Beaumont met this burden, Flones would bear the burden to demonstrate that this legitimate reason is pretextual. *Id.* Flones would need to prove not only that Beaumont's proffered reason was a pretext, but that the real reason for her termination was intentional retaliation. *Avery Dennison Corp.*,104 F.3d at 862.

Beaumont shows legitimate, non retaliatory reasons for Flones' termination: her repeated errors related to patient care and interaction, as discussed in detail above. And, Flones fails to meet her burden to show pretext by rebutting Beaumont's reasons with proof which raises a genuine issue of material fact as to whether those reasons were pretextual and reflective of intentional retaliation. *See, e.g, Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007) (applying the three categories to

determine pretext in a discrimination claim equally to a retaliation claim). Beaumont is

entitled to summary judgment on Flones' retaliation claim.

## V.    CONCLUSION

The Court **GRANTS** Beaumont's motion for summary judgment in its entirety.

The Court declines to award Beaumont attorney fees and costs.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  June 13, 2013

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 13, 2013.<br><br>s/Linda Vertriest<br>Deputy Clerk |